**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RYAN MOORE<br>12650 Granite Ridge Drive<br>North Potomac, MD 20878 | )<br>)<br>)<br>)<br>) | Civil Action No. |
| v. | )<br>) | |
| CARLA HAYDEN, in her capacity as<br>Librarian of Congress<br>101 Independence Avenue SE<br>Washington, D.C. 20540 | )<br>)<br>)<br>)<br>)<br>) | Jury Trial Demanded |

**COMPLAINT**

Plaintiff brings this suit because the Library of Congress, through its supervisory personnel, denied Plaintiff's request for reasonable accommodations and retaliated against him by permanently reassigning him because of his opposition to protected activity and because he filed a complaint of discrimination and retaliation. Additionally, the Library of Congress imposed a continuing hostile work environment on Mr. Moore by: (1) revoking his reasonable accommodations, including telework; (2) rejecting his renewed accommodation request; (3) reassigning him to the Reading Room and away from his cartographic specialist position in the Office of the Chief; (4) withdrawing prestigious cartographic history and collection oversight related duties and assignments; (5) threatening and imposing unwarranted discipline; (6) permanently reassigning him to the Reading Room and away from his prestigious cartographic specialist duties; and (7) refusing to interview him (and therefore rejecting him) for a temporary promotion to a position as Head of the Reading Room for which he was imminently qualified.

**I. JURISDICTION AND VENUE**

1. At all times relevant to this complaint, Plaintiff has been a full time employee of the

1

Library of Congress.

2. Defendant is the Librarian of Congress, the head of the Library of Congress, which is an agency of the U.S. Government.

3. This civil action is brought pursuant to the Americans With Disabilities Act (ADA), as amended, specifically, 42 U.S.C. § 12112 (prohibiting discrimination on the basis of disability) and 42 U.S.C. 12203 (prohibiting retaliation), 42 U.S.C. § 2000e-5 and 42 U.S.C. § 2000e-16(c).

4. This Court has jurisdiction pursuant to 28 U.S.C. 1331 (Federal Question) and 42 U.S.C. 2000e-5.

5. Venue for this Civil Action is appropriate in the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. 1391 and 42 U.S.C. 2000e-5(c), referenced therein, because all of the unlawful employment actions at issue in this civil action occurred in the District of Columbia.

6. Plaintiff has exhausted his administrative remedies in this case by: (1) contacting Defendant's EEO representative to complain about the denied accommodation, retaliation and hostile work environment on February 21, 2017, which was within 45 days of the date Plaintiff learned that Paulette Hasier (Chief of Geography and Map Division) removed the accommodations under which he had been operating for several years, as required by Library of Congress Regulation (LCR) 2010-3.1, Section 4(A); (2) filing a formal complaint of disability discrimination and retaliation on March 16, 2017, pursuant to the deadline explained in LCR 2010-3.1, Section 4(D) and Section 5; (3) Amending his complaint, on May 24, 2017, challenging the denial of accommodations and the permanent reassignment to the Reading Room; (4) participating with the Library of

Congress's investigation (Pursuant to LCR 2010-3.1 Section 6) through its completion to the issuance of a Report of Investigation; and (5) receiving a decision from the Assistant Chief of the Equal Employment Opportunity Complaints Office, which was issued on December 4, 2017.

7. Plaintiff is authorized to file this civil action pursuant to 42 U.S.C. § 2000e-16(c) because the Library issued a Final Agency Decision on December 4, 2017 that was not in his favor. This suit is filed within 90 days of the issuance of the adverse Final Agency Decision.

## II. FACTS

8. Prior to October 2017, the Plaintiff, Ryan Moore, was a GS-13 Cartographic Specialist in the Office of the Chief, in the Geography and Map Division of the Library of Congress, in the Library Services, Geography and Map Division. Mr. Moore had been in the same position in since 2015.

9. Between 2008 and 2015, Mr. Moore had been a Technical Information Specialist in the Geography and Map Division.

10. Plaintiff is a qualified person with a disability. He suffers from Congenital Primary Bilateral Lymphedema (also known as Milroy's Disease). Lymphedema is a genetic developmental disorder affecting the lymphatic system. The disease is characterized by swelling (edema) of the lower legs and feet and hardening of the skin. As a result of the disorder, Mr. Moore is required to avoid long periods of immobility and standing, and should perform certain exercises and stretches regularly.

11. Because of Plaintiff's disability, the combination of standing, walking, kneeling, climbing, carrying and lifting caused him in debilitating pain and fatigue.

12. Mr. Moore was able to perform the essential functions of his position with accommodations, which had been in place since approximately 2010 after having been approved by a previous manager. These accommodations included two days a week of telework, dimming of lights over his desk, a private office that allowed him to perform exercises and stretches without embarrassment, and the use of a stool to elevate his legs when he sat at his desk.

13. Paulette Hasier became the Chief of the Geography and Maps Division in late January or early February 2017.

14. Michael Buscher was the Team Leader for the Reading Room n the Geography and Maps Division at all times relevant to this complaint.

15. Mark Sweeney is the Associate Librarian over Library Services.

16. On February 2, 2017, Mr. Moore, wrote an email to Paulette Hasier, the Chief of the Geography and Map Division (his first line supervisor) indicating that he wanted to work with her to eliminate a hostile working environment caused because African American and Asian employees were being subjected to racist remarks, which were harmful to the entire workplace environment.  Ms. Hasier reacted angrily to the email and told Mr. Moore that she believed he was trying to damage her professionally.

17. On February 16, 2017, two weeks after Mr. Moore advised Ms. Hasier of the potential hostile working environment against African -American and Asian-American employees, Ms. Hasier placed Mr. Moore on a detail to the Reading Room and terminated his ability to use telework.

18. During the February 16, 2017 meeting in which Ms. Hasier told Mr. Moore that he was being detailed away from his Cartographic Specialist position, Plaintiff explained that –

although he was willing to help as needed, including covering the Reference Desk – he could not accept the detail to the Reading Room because the detail conflicted with the accommodations under which he had been working. Ms. Hasier responded by telling Plaintiff: "get ready to change your life."

19. Shortly after the February 16, 2017 meeting, Mr. Moore advised Ms. Hasier that he was going to take sick leave the following day due to anxiety and stress caused by the threat to detail him to the Reference Desk and to remove his accommodations. In response, Ms. Hasier threatened to list Plaintiff as AWOL if he did not appear at work.

20. Mr. Moore contacted an EEO representative to complain about the denied accommodation, retaliation and hostile work environment on February 21, 2017.

21. Plaintiff filed a formal request for accommodation on February 24, 2017 requesting, among other things, that he be permitted to telework two days a week, that he be permitted to keep his feet elevated, that he not be required to stand for prolonged periods, walk for extended periods or to crouch, and that the lights be dimmed in his workspace.

22. On several occasions in February 2017, Plaintiff asked Ms. Hasier and Mr. Buscher about his accommodation request and provided them with documentation supporting his accommodation request, but Mr. Buscher told him that he was not going to get involved. On February 21, 2017 Ms. Hasier instructed Mr. Moore not to correspond any further with Mr. Buscher about the accommodation request.

23. Mr. Buscher sent Plaintiff an email on the morning of March 6, 2017 informing him that continued use of telework would be considered misconduct subject to discipline and that Mr. Moore would be charged with AWOL, which was also subject to discipline.

24. Mark Sweeney denied Plaintiff's formal accommodation request the accommodation

request on the evening of March 6, 2017.

25. In the March 6, 2017 email in which Mr. Sweeney denied the accommodation, Sweeney stated that the detail to the Geography and Maps Reading Room would be implemented, effective immediately, and that he would thereafter be reporting to Mr. Buscher.

26. Mr. Moore's attorney contacted the Office of General Counsel in an attempt to secure Plaintiff's requested accommodations on several occasions between March 7 and March 10, 2017.

27. On March 10, 2017 the Office of General Counsel declared that neither Mr. Moore's permanent position as Cartographic Specialist, nor the detail to the Reading Room lent themselves to Telework, even though no workplace analysis had been conducted at that time.

28. Under the detail to the Reading Room, Plaintiff was required to work one day each week on the Reference Desk and to serve as a relief Librarian on the Reference Desk a second day each week. In addition, Plaintiff was required to continue to fulfill all of his duties in his former Cartographic Specialist position.

29. There was no need to detail the Plaintiff to the Reading Room position (and thereby eliminate his accommodations) because numerous other qualified Librarians were available and interested in the detail.

30. A primary problem of the Reading Room detail was that it did not permit Plaintiff to continue to use his telework accommodation because he had to be physically present at the Reference Desk two days each week.

31. Additionally, unlike other employees assigned to the Reading Room, Mr. Moore was assigned to fix shifts from 9:30 to 5:00pm. The other employees in the Reading Room

6

were permitted to work flex schedules.

32. The LOC claimed that not only did the detail not permit telework, but that Mr. Moore's regular position (Collections Specialist in the Geography and Map Division) did not permit telework, despite the fact that Mr. Moore had been using the telework option for the prior 10 years, and had received Outstanding Performance Evaluations since 2011, while using the Telework option.

33. On March 16, 2017, the Defendant's Equal Employment Opportunity and Diversity Programs Office (EEO) informed Mr. Moore that informal attempts to secure his accommodations were unsuccessful.

34. Mr. Moore filed a formal EEO complaint of disability discrimination and retaliation on March 16, 2017.

35. Even though Plaintiff had initiated the discussion about his need for an accommodation on February 16, 2017, and filed the informal complaint of discrimination (which involved an attempt at resolution in early March), Ms. Hasier did not engage in the "interactive process" until April 7, 2017. During a meeting on that day, Ms. Hasier demanded that Mr. Moore provide a detailed account of all of the work he had performed under the telework accommodation for every day of the fourth quarter of calendar year 2016. That was an impossible challenge because Mr. Moore had not been required to keep such granular time accounting at that time.

36. Immediately after the April 7, 2017 meeting, in order to further undermine Mr. Moore's accommodation request for telework, Ms. Hasier added an additional day of Reference Desk coverage.

37. On April 11, 2017, Ms. Hasier formally denied Plaintiff's medical telework request,

claiming that there was not enough substantive work for him to perform even one day a week.

38. On April 18, 2017, Plaintiff appealed Ms. Hasier's accommodation denial to Mark Sweeney, the Associate Librarian for Library Services.

39. On May 16, 2017, Mr. Sweeney denied Plaintiff's appeal. But at the same time, Sweeney permitted Plaintiff to telework one day per week "on a trial basis." Mr. Moore had previously been permitted to work two days a week on telework, so the one day reduction was significant and adverse.

40. Consistent with the pattern of punishing Plaintiff each time he asserted his right not to be discriminated against, the LOC retaliated against Plaintiff for appealing Hasier's denial. In the same May 16, 2017 letter in which he denied Plaintiff's appeal, Mr. Sweeney also permanently transferred Plaintiff from the Office of the Chief, to the Reading Room, so that Plaintiff would no longer report directly to Ms. Hasier and he would permanently report to Mr. Buscher.

41. Mr. Moore amended his formal complaint of discrimination and retaliation to include the permanent reassignment on May 24, 2017 and that amendment was accepted on May 31, 2017.

42. The Defendant issued a preliminary decision rejecting Plaintiff's claims for discrimination and retaliation on October 17, 2017.

43. Mr. Moore was not satisfied with the initial determination and asked for a Final Agency Decision by the Librarian on November 3, 2017.

44. The Defendant issued its Final Agency decision on December 4, 2017, concluding that there was "no evidence" of discrimination, retaliation or hostile work environment.

45. On December 20, 2017, Defendant announced an opportunity for a temporary promotion or detail opportunity to the GS 14 level, to serve as the Head of Reference and Reader Services in the Geography and Map Division.

46. Mr. Moore was qualified for the position and he timely applied. Additionally, Mr. Buscher recommended Plaintiff to Ms. Hasier.

47. Ms. Hasier did not interview Plaintiff, and she selected another candidate on January 31, 2018.

48. The selectee for the Temporary Promotion is not disabled and has never engaged in protected activity against Ms. Hasier or the Library of Congress.

49. On or about January 8, 2018, Ms. Hasier removed important duties from Plaintiff, including being part of the "Finding Aides Program," which had been part of Plaintiff's job description for years.

50. Additionally, on or about January 8, 2018 Ms. Hasier eliminated the prestigious <u>Phillips Map Society Occasional Papers</u>, to which Plaintiff contributed papers and also managed. This was a prestigious assignment for Plaintiff and no reason was given for its discontinuance.

51. The Finding Aides and Phillips Society assignments were two of the principal functions that Plaintiff performed on his once-weekly telework days. They are also unique, high visibility and prestigious assignments, which made Plaintiff more attractive as a candidate for promotion to higher levels.

52. In late January/early February 2018, Mr. Moore had an opportunity of a prestigious speaking opportunity for the Rocky Mountain Map Society, in Denver Colorado, where he would have discussed the LOC's Map Collections. Plaintiff had to decline the

invitation because – even though the Rocky Mountain Map Society offered to pay Plaintiff's air fare, hotel and meals, Ms. Hasier would only approve Administrative leave if Mr. Moore came to work at the LOC first, then took the flight to Denver from work, then teleworked on the flight returning from Denver after the event. These were unusual demands for such an engagement and made the trip too demanding for Mr. Moore to accept. Consequently, Mr. Moore was forced to decline the invitation. Speaking engagements of this nature are impressive accomplishments that give candidates competitive advantages for selections.

### III. FIRST COUNT: DISABILITY DISCRIMINATION

53. Plaintiff repeats all of the above paragraphs as if they were specifically restated here.

54. Defendant withdrew reasonable accommodations that Mr. Moore had been using since March of 2010.

55. Defendant made unwarranted changes to Mr. Moore's duties and assignments in order to make it impossible for him to maintain his prior accommodations.

56. Defendant failed to engage in the interactive process of identifying reasonable accommodations and instead declared that Mr. Moore was required to accept the detail to the Reading Room (which *de facto* eliminated many of the accommodations) despite the availability of other qualified candidates for the detail.

57. Defendant withdrew assignments that lend themselves to telework in order to eliminate the viability of a telework accommodation.

58. Defendant ultimately denied Mr. Moore's reasonable accommodation (two days of week telework), only to permit him to use one day of telework, *but not as an accommodation for disability*, and which can be withdrawn at any time.

59. Defendant additionally rejected Plaintiff for a temporary promotion to the GS-14 Head of Reference and Reader Services in the Geography and Map Division because of his disability.

60. As a result of the Defendant's disability discrimination against Plaintiff, Plaintiff has suffered stress, anxiety, physical discomfort, embarrassment and humiliation, reduced promotion potential, lost income and emotional pain and suffering.

## IV. SECOND COUNT: RETALIATION

61. Plaintiff repeats all of the above paragraphs as if they were specifically restated here.

62. In retaliation for Plaintiff's protected activity Defendant:

   a. Withdrew reasonable accommodations that Mr. Moore had been using since March of 2010;

   b. Made unwarranted changes to Mr. Moore's duties and assignments in order to make it impossible for him to maintain his prior accommodations;

   c. Failed to engage in the interactive process of identifying reasonable accommodations and instead declared that Mr. Moore was required to accept the detail to the Reading Room (which *de facto* eliminated many of the accommodations) despite the availability of other qualified candidates for the detail;

   d. Withdrew assignments that lend themselves to telework in order to eliminate the viability of a telework accommodation;

   e. Denied Mr. Moore's reasonable accommodation (two days of week telework), only to permit him to use one day of telework, *but not as an accommodation for disability*, and which can be withdrawn at any time;

 f. Rejected Plaintiff for a temporary promotion to the GS-14 Head of Reference and Reader Services in the Geography and Map Division because of his disability.

 g. Imposed such onerous conditions that Plaintiff had to turn down a speaking engagement at the Rocky Mountain Map Society;

 h. Removed Plaintiff's Reading Aides duties; and

 i. Eliminated the Phillips Map Society Occasional Papers Series.

63. As a result of the Defendant's retaliation against Plaintiff, Plaintiff has suffered stress, anxiety, physical discomfort, embarrassment and humiliation, reduced promotion potential, lost income, and emotional pain and suffering.

## V. THIRD COUNT: HOSTILE WORK ENVIRONMENT

64. Plaintiff repeats all of the above paragraphs as if they were specifically restated here.

65. Because of disability discrimination and/or retaliation for Plaintiff's protected activity Defendant's conduct as listed in this complaint, including but not limited to the following conduct has imposed a hostile work environment on Plaintiff:

 a. Threatening him with discipline, including the threat to place him in AWOL status on two occasions;

 b. Withdrawing reasonable accommodations that Mr. Moore had been using since March of 2010;

 c. Forcing him to accept an undesired detail to the Reading Room;

 d. Making unwarranted changes to Mr. Moore's duties and assignments in order to make it impossible for him to maintain his prior accommodations;

 e. Failing to engage in the interactive process of identifying reasonable accommodations and instead declared that Mr. Moore was required to accept the

      detail to the Reading Room (which *de facto* eliminated many of the accommodations) despite the availability of other qualified candidates for the detail;

  f. Withdrawing assignments that lend themselves to telework in order to eliminate the viability of a telework accommodation;

  g. Permanently reassigning him to the Reading Room;

  h. Denying Mr. Moore's reasonable accommodation (two days each week of telework), only to permit him to use one day of telework, *but not as an accommodation for disability*, and which can be withdrawn at any time;

  i. Rejecting Plaintiff for a temporary promotion to the GS-14 Head of Reference and Reader Services in the Geography and Map Division because of his disability.

  j. Imposing such onerous conditions that Plaintiff had to turn down a speaking engagement at the Rocky Mountain Map Society;

  k. Removing Plaintiff's Reading Aides duties; and

  l. Eliminating the Phillips Map Society Occasional Papers Series.

66. As a result of the hostile work environment against Plaintiff, Plaintiff has suffered stress, anxiety, physical discomfort, embarrassment and humiliation, reduced promotion potential, lost income, and emotional pain and suffering

## VI. PRAYER FOR RELIEF

67. Plaintiff respectfully requests that this Court: (i) declare that the employment practices complained of in this Complaint are unlawful; (ii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be unlawful; (iii) order the Defendant to make the Plaintiff whole by (a) placing Plaintiff in

a GS-14 position, retroactive to January 31, 2018; (c) paying Plaintiff his monetary damages and compensatory damages as determined at trial; (iv) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance; (v) order the Defendant to pay Plaintiff's costs and expenses and reasonable attorneys' fees in connection with this action; and (vi) grant such other and further relief to the Plaintiff as the Court deems just and proper, including transferring Plaintiff to a different division and supervisor to ensure against retaliation.

### VII.  JURY DEMAND

68. Plaintiff demands a jury trial.

**Date: February 28, 2018**

        Respectfully Submitted,

        Leslie D. Alderman III (D.C. # 477750)
        ALDERMAN, DEVORSETZ & HORA, PLLC
        1025 Connecticut Ave., NW, Suite 615
        Washington, DC 20036
        Tel: 202-969-8220
        Fax: 202-969-8224
        lalderman@adhlawfirm.com
        Attorney for the Plaintiff